No. 84,671

STATE OF KANSAS, *Appellant*, v. DAVID L. PRITCHETT, *Appellee*.

(11 P.3d 1125)

Opinion filed October 27, 2000.

*Angela M. Wilson*, assistant district attorney, argued the cause, and *Christine Kenney Tonkovich*, district attorney, and *Carla J. Stovall*, attorney general, were with her on the brief for appellant.

*Sally G. Kelsey*, of The Law Offices of Donald G. Strole, of Lawrence, argued the cause, and *Donald G. Strole*, of the same firm, was with her on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: The State appeals from the district court's order suppressing the evidence and dismissing a three-count complaint involving under-age drinking and obstruction of official duty against David L. Pritchett. The case was transferred by this court from the Court of Appeals pursuant to K.S.A. 20-3018(c).

At the hearing on defendant's motion to suppress, Jim Wilson testified that on August 27, 1999, he was working in Lawrence, Kansas, as an agent with the Kansas Alcohol and Beverage Control, Division of the Kansas Department of Revenue. At approximately 11:45 that night, he and five other agents went onto the premises of a catered event for the purpose of checking for liquor law violations. He noticed a male and female standing together. The male was the defendant.

Agent Wilson testified that the male and female were holding beer in plastic cups. In fact, at the time he saw them, he saw amber-colored liquid in the cups, which he did not know but was "convinced" was beer. He testified that later some of the liquid spilled on him, and "it definitely had the odor of beer."

Based on his experience as the father of a 21-year-old son and Pritchett's being thin and not yet filled out, Agent Wilson suspected that defendant was not yet 21 years of age. Wilson also stated that he had received some training in spotting underage drinkers.

Wilson walked up to the pair, identified himself as an agent with Alcoholic Beverage Control, and asked each of them for proof of age. The female produced identification showing she was 21. Pritchett said he did not have identification. Pritchett seemed "pretty nervous."

Agent Wilson testified that Pritchett was wearing a wristband. Wilson described it as "an indication that he showed somebody that he was 21 years of age." Pritchett admitted that he obtained the wristband by producing identification that showed he was 21.

Agent Wilson told Pritchett that he would need to verify his age and asked him to go to the agent's van for that purpose. Pritchett said he was leaving, needed to be someplace else, and did not have time to go to the van. The agent thought it was odd that the defendant would be leaving when his cup was full. Wilson told Pritchett that he had to go to the van with him. In his report, Agent

Wilson wrote: " 'I explained to him that until he could produce proof of his age, he was in custody and would have to come with me.' "

Agent Wilson testified that Pritchett was in custody at the time they walked toward the van. Once or twice while they were walking, Agent Wilson held Pritchett by the arm. Up to this point, Wilson had not asked the defendant for his name. His purpose in taking the defendant to the van was to get him to tell his name and to use the radio to call for defendant's date of birth. Even though Pritchett had not given any personal information up to that time, Wilson seemed to think that he would because "[m]ost people do."

When they had nearly reached the van, the defendant ran from Wilson. The agent lost sight of Pritchett, but eventually found him lying on the ground behind a wall. Agent Wilson jumped over the wall, placed Pritchett under arrest, handcuffed him, and walked him back to the van.

The agent searched Pritchett. Defendant's wallet contained two Kansas driver's licenses. One showed his date of birth to be 9/24/76 and the other 9/24/79. Pritchett admitted that 1979 was the year of his birth.

In granting defendant's motion to suppress and dismiss the charges, the district court made the following findings of fact:

"1. While attending a catered event, the defendant and a female friend were approached by Agent Jim Wilson of the Alcoholic Beverage Control Bureau of the State of Kansas.

"2. Agent Wilson approached the defendant and a female to whom defendant was speaking because they were holding cups he believed to contain beer and they both 'looked young.'

"3. Agent Wilson based this thought on the physical characteristics of the defendant and his companion and his experience with his own children, ages 18 and 21.

"4. Agent Wilson asked each for identification.

"5. The female produced identification showing her to be 21 years of age.

"6. The defendant indicated he had no identification.

"7. At no time did the defendant give Agent Wilson his name, his address or his date of birth, nor was he asked for this information.

"8. Agent Wilson testified that during the encounter the defendant appeared nervous.

"9. Agent Wilson informed the defendant he would have to come to Wilson's van and remain until he could verify his age.

"10. Agent Wilson testified that the defendant was definitely in custody until he could produce proof of his age.

"11. On the way to Wilson's van, the defendant ran away.

"12. When Agent Wilson apprehended the defendant he placed him under arrest.

"13. Agent Wilson based his probable cause to arrest on the following: (a) defendant had produced no identification; (b) he was youthful in appearance; (c) he was nervous; (d) he was resistive; and, (e) he ran away.

"14. Agent Wilson searched the defendant, incident to arrest, and found two pieces of identification, one showing a date of birth of September 24, 1976, and the other a date of birth of September 24, 1979.

"15. Based on this evidence defendant was charged with minor in possession, possessing an altered driver's license and obstruction of official duty."

We first consider whether the district court erred in suppressing the evidence. This court recently stated the standard of review when analyzing a district court's suppression of evidence in *State v. Toothman*, 267 Kan. 412, Syl. ¶ 1, 985 P.2d 701 (1999):

"When analyzing a district court's suppression of evidence, an appellate court reviews the factual underpinnings of a district court's decision by a substantial competent evidence standard and the ultimate legal conclusion drawn from those facts by a de novo standard. An appellate court does not reweigh the evidence. The ultimate determination of the suppression of evidence is a legal question requiring independent appellate review."

Finding that Agent Wilson did not have reasonable suspicion at the time Pritchett failed to produce identification to believe that defendant was committing a crime, the district court granted defendant's motion to suppress the evidence against him and dismiss the charges. The State advances several arguments why it was error for the district court to suppress the evidence of Pritchett's possessing false identification. The State first argues that when he approached Pritchett, the agent reasonably suspected that the defendant was committing a crime.

At a catered event where alcoholic beverages were being served, Agent Wilson saw the defendant holding a plastic cup containing an amber-colored liquid. Wilson, who has bases in his own 21-year-old son and in his job training for knowing what a 21-year-old looks like, believed that the defendant was younger than that.

K.S.A. 1999 Supp. 41-727 makes it a misdemeanor for a person less than 21 years of age to possess, consume, or obtain alcoholic liquor or cereal malt beverage. It is the State's position that when Wilson adjudged the defendant to be younger than 21 and saw that he was holding a cup of liquid that appeared to be beer at a catered event where alcoholic beverages were being served, the agent had reasonable suspicion that defendant was committing the act made criminal by 41-727.

The following standard for determining reasonable suspicion was stated by the court in *State v. Slater*, 267 Kan. 694, Syl. ¶¶ 1, 2, 986 P.2d 1038 (1999):

"A law enforcement officer may stop any person in a public place based upon specific and articulable facts raising a reasonable suspicion that such person has committed or is about to commit a crime."

"Reasonable suspicion is a less demanding standard than probable cause, not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors, quantity and quality, are considered in the totality of the circumstances that must be taken into account when evaluating whether reasonable suspicion exists."

The district court concluded that Wilson did not reasonably suspect that Pritchett was committing a crime. The district court stated:

"The agent was unable to articulate his reasons for thinking the defendant looked young. No objective criteria was given. When dealing with subjective criteria, such as looking young, there is a greater possibility for abuse and/or mistakes. As in *State v. Epperson*, [237 Kan. 707, 703 P.2d 761 (1985)], and *State v. DeMarco*, 263 Kan. 727, [952 P.2d 1276] (1998), the agent was suspicious but he had no objective facts on which to form a belief that the defendant or his companion was involved in criminal activity."

In *Epperson*, the officer was on routine patrol at 2 a.m. in an area troubled by burglaries when he stopped two men who had just gotten out of an expensive car about 150 yards from a private club that was open for business. At the suppression hearing, the officer conceded that at the time he stopped the men "he did not

have any cause to believe that they were committing or had committed any crime." 237 Kan. at 709.

In *DeMarco*, the officer validly stopped defendant's car on I-70 for changing lanes without signalling, in violation of K.S.A. 8-1548. The officer then detained DeMarco and his passenger, who refused consent to search the trunk, until another officer arrived with a narcotics dog. Marijuana was found in the trunk. The officer gave DeMarco's nervousness as "the 'number one' factor forming the basis of his reasonable suspicion." 263 Kan. at 735. The court stated: "DeMarco's nervousness alone does not provide sufficient reasonable suspicion of illegal activity." 263 Kan. at 738. Additional factors were a somewhat unlikely travel plan and an inconsistency between DeMarco's and the passenger's versions of that plan. The court, however, found that defendant offered a plausible explanation for their route and that the inconsistency was minor. The officer also considered that defendant was driving a rental car from Los Angeles, which is a major drug source city. According to the court, even the officer did not place much significance on defendant's driving a rental car. With regard to the departure city, the court stated that DeMarco's "coming from Los Angeles seems too innocuous to arouse objective suspicion of criminal activity." 263 Kan. at 740. Although the court considered this to be a close case, it affirmed the district court's suppression order.

Neither case is controlling here. In both cases the factors that raised the officers' suspicions were nearly as consistent with noncriminal activity as with criminal activity. Epperson was parked near a private club in a burglary-troubled area. He and his passenger seemed startled to see a policeman. DeMarco was traveling from Los Angeles in a rented car. He was nervous. The principal factors that raised Agent Wilson's suspicions in the present case, however, were not consistent with noncriminal activity — Pritchett, who was holding what appeared to be a beer, looked too young to legally possess an alcoholic beverage. This is not to say that the agent might not have been mistaken. Looks can and do deceive. The amber-colored liquid in Pritchett's cup might have been non-alcoholic. However, Wilson believed, based on his experience and training, that Pritchett was younger than 21 and, based on the look

of the liquid and the social context, that Pritchett was holding a cup of beer. There was a sound articulable reason for him to believe that defendant was committing a crime. In contrast, the officers in *Epperson* and *DeMarco* acted on intuitive feelings. The officers had no objective basis for reasonably suspecting that Epperson or DeMarco were involved in criminal activity.

The quantity of information in this case is commensurate with the elements of the suspected crime. The defendant looked younger than 21, and he was holding a cup of liquid that looked like beer. The quality of the information matches its quantity. It is first-hand information, the agent's impressions were grounded in his life experience and training, and the facts raising his suspicion were specific and articulable. We agree with the State that Agent Wilson had reasonable suspicion that defendant was violating K.S.A. 1999 Supp. 41-727.

K.S.A. 22-2402 provides:

"(1) Without making an arrest, a law enforcement officer may stop any person in a public place whom such officer reasonably suspects is committing, has committed or is about to commit a crime and may demand of the name, address of such suspect and an explanation of such suspect's actions.

"(2) When a law enforcement officer has stopped a person for questioning pursuant to this section and reasonably suspects that such officer's personal safety requires it, such officer may frisk such person for firearms or other dangerous weapons. If the law enforcement officer finds a firearm or weapon, or other thing, the possession of which may be a crime or evidence of crime, such officer may take and keep it until the completion of the questioning, at which time such officer shall either return it, if lawfully possessed, or arrest such person."

Agent Wilson had reasonable suspicion within the meaning of the statute. K.S.A. 22-2402(1) authorized him to demand defendant's name and address as well as an explanation of his actions.

The district court, in its alternative analysis, expressed the views that, if Wilson was proceeding under K.S.A. 22-2402, "there is nothing in that statute that gives an officer the authorization to demand an individual to provide his age nor to compel an individual to provide identification" and that "[t]he defendant had a right not to produce proof of his age." The statute authorizes an officer to demand an explanation of the suspect's actions. In the circum-

stances of suspected underage drinking, the only effective explanation lies in verification of the suspect's age.

The district court also expressed the view that the agent exceeded his authority in requiring the suspect to accompany him to the van in order to run a check on the suspect's age. The State argues that reasonable suspicion is all Agent Wilson needed for the investigatory detention of Pritchett. In other words, the taking of Pritchett to the van to confirm his age was within the scope of a *Terry* stop. The State comments in its brief that while reasonable suspicion is all Agent Wilson needed to detain Pritchett, "the totality of the circumstances indicate the agent actually had probable cause to arrest the defendant at that time."

In his concurring opinion in *Kolender v. Lawson*, 461 U.S. 352, 364, 75 L. Ed. 2d 903, 103 S. Ct. 1855 (1983), Justice Brennan noted that *Terry* and its progeny recognize an officer's right to "effect a brief detention for the purpose of questioning." Although any person could in passing ask another person a question, an officer can do far more: "If they have the requisite reasonable suspicion, they may use a number of devices with substantial coercive impact on the person to whom they direct their attention, including an official 'show of authority,' the use of physical force to restrain him, and a search of the person for weapons." Further detention "can be justified only by probable cause to believe that a crime has been committed." 461 U.S. at 365.

Justice Brennan then observed:

"In sum, under the Fourth Amendment, police officers with reasonable suspicion that an individual has committed or is about to commit a crime may detain that individual, using some force if necessary, for the purpose of asking investigative questions. They may ask their questions in a way calculated to obtain an answer. But they may not *compel* an answer, and they must allow the person to leave after a reasonably brief period of time unless the information they have acquired during the encounter has given them probable cause sufficient to justify an arrest." 461 U.S. at 366.

He further amplified on probable cause to justify an arrest:

"4. Of course, some reactions by individuals to a properly limited *Terry* encounter, *e.g.*, violence toward a police officer, in and of themselves furnish valid grounds for arrest. Other reactions, such as flight, may often provide the necessary

information, in addition to that the officers already possess, to constitute probable cause. In some circumstances it is even conceivable that the mere fact that a suspect refuses to answer questions once detained, viewed in the context of the facts that gave rise to reasonable suspicion in the first place, would be enough to provide probable cause. A court confronted with such a claim, however, would have to evaluate it carefully to make certain that the person arrested was not being penalized for the exercise of his right to refuse to answer." 461 U.S. at 366, N. 4.

Here Pritchett did not refuse to answer Agent Wilson's questions. He denied having any identification with him. Agent Wilson, however, had observed that Pritchett was wearing a wristband, which indicated to the agent that defendant had furnished proof of age to someone else in order to obtain the wristband. Having received no satisfactory response from the defendant and having received what Wilson justifiedly considered to be misinformation about not having identification from the defendant, the agent insisted on defendant's accompanying him to the van, where a check could be made on the suspect's age.

Pritchett contends that the fact of his wearing a wristband cannot be considered because it was not among the district court's findings of fact. Although this court normally gives deference to the district court's factual findings, it will take note of an overlooked material fact so long as it is supported by substantial competent evidence. See *Toothman*, 267 Kan. 412, Syl. ¶ 1.

We have concluded that Agent Wilson had reasonable suspicion to approach and question Pritchett. Pritchett chose to respond to the agent's questions. His responses, together with the wristband, transformed Agent Wilson's reasonable suspicion into probable cause to arrest Pritchett. Thus, Agent Wilson had authority to take Pritchett into custody for the purpose of confirming his identity and age.

The district court erred in sustaining the motion to suppress the evidence that supported the first two counts of the complaint, underage possession of alcoholic beverage and unlawful use of identification. Likewise the dismissal of the third count, obstruction of justice, was based upon the erroneous conclusion that Agent Wilson did not have authority to take Pritchett into custody and thus he was within his rights in running away.

We note that the record is confusing as to whether the district court dismissed the complaint or just count 3 of the complaint. The defendant's motion prayed for dismissal of the obstruction of justice charge, which was count 3 of the complaint. The district judge announced from the bench that the defendant's motion to dismiss was granted. However, she told the defendant that he was free to go, which indicated she had dismissed the complaint. There was no objection or request for clarification by the State, and both parties in arguing this appeal accept as fact that the district court dismissed the complaint and not just count 3.

We reverse the district court's order suppressing the evidence and dismissing the complaint. We remand with directions to reinstate the complaint and for further proceedings in conformity with this opinion.

Reversed and remanded with directions.