(55 P.3d 354)
No. 86,366

STATE OF KANSAS, *Appellee*, v. PATRICIA LYNN WIG, *Appellant*.

Opinion filed March 8, 2002.

*Autumn L. Fox*, of The Law Office of Autumn L. Fox, of Abilene, for appellant.

*Thomas V. Black*, county attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before LEWIS, P.J., PIERRON and BEIER, JJ.

BEIER, J.: Patricia Lynn Wig appeals her jury trial convictions of one count of attempted manufacture of methamphetamine and one count of felony possession of drug paraphernalia. She contends that evidence found in a search of her van and her subsequent statements should have been suppressed because her consent to the search was involuntary, and that insufficient evidence supported her convictions. We affirm.

This case began when police received a report that a man leaving Wal-Mart in Wig's van had made a suspicious purchase of cold medicine and possibly had stolen some batteries. An officer followed the van until it parked in another store's parking lot, and a detective went into the store to speak with the van's three occupants, including Wig.

After a man with Wig denied buying any batteries at Wal-Mart, the detective asked Wig for permission to search her van. Wig consented. The detective found 13 boxes of cold medicine containing pseudoephedrine. He also found a "salad shooter" that had white powder caked around the cutting portion of the machine. Later tests confirmed ephedrine or pseudoephedrine in the powder on the salad shooter; ephedrine or pseudoephedrine is used to manufacture methamphetamine. Wig said the salad shooter belonged to her, but she had loaned it to her daughter and did not know if it was ever used to grind cold tablets.

The detective then asked Wig and the two other occupants of the van to come to the sheriff's office to give a statement. In her statement, Wig said she had been given $100 to purchase Sudafed for others to manufacture methamphetamine. She had been instructed to take several people to purchase the cold medicine. In return, she would receive $300 and methamphetamine to give to her son-in-law, one of the other occupants of the van. Wig's son-in-law gave a similar statement.

Wig filed a motion to suppress, arguing her consent to the search was involuntary and her statement was made in a custodial interrogation in which she did not receive *Miranda* warnings. The district court denied the motion after a hearing. Wig failed to object at trial to the introduction of the evidence obtained in the search, or her subsequent incriminating statement.

### *Voluntariness of Consent*

" 'When a pretrial motion to suppress has been denied, the moving party must object to introduction of the evidence at trial in order to preserve the issue for appeal.' " *State v. Gilbert*, 272 Kan. 209, 212, 32 P.3d 713 (2001) (quoting *State v. Jones*, 267 Kan. 627, 637, 984 P.2d 132 [1999]). Because Wig failed to object to admission of the evidence found in her van and her statement at trial, we need not address the merits of this claim.

If we were to address the merits, we would affirm the district court.

" 'When analyzing a district court's suppression of evidence, an appellate court reviews the factual underpinnings of a district court's decision by a substantial competent evidence standard and the ultimate legal conclusion drawn from those facts by a de novo standard. An appellate court does not reweigh the evidence. The ultimate determination of the suppression of evidence is a legal question requiring independent appellate review.' " *State v. Pritchett*, 270 Kan. 125, 128, 11 P.3d 1125 (2000) (quoting *State v. Toothman*, 267 Kan. 412, Syl. ¶ 1, 985 P.2d 701 [1999]).

We have carefully reviewed the record of the suppression hearing and see ample evidence to support the district court's finding that Wig's consent to search her van was voluntary. We also see ample evidence to support the district court's finding that she was

not subject to a custodial interrogation when she gave her incriminating statement. We would agree with the district court's refusal to suppress.

### Sufficiency of Evidence on Attempt to Manufacture Methamphetamine

"When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Doyle,* 272 Kan. 1157, 1161, 38 P.3d 650 (2002).

Wig was convicted of attempted manufacture of methamphetamine under K.S.A. 1998 Supp. 65-4159, which provides in relevant part:

"(a) Except as authorized by the uniform controlled substances act, it shall be unlawful for any person to manufacture any controlled substance or controlled substance analog.
"(b) Any person violating the provisions of this section with respect to the unlawful manufacturing or attempting to unlawfully manufacture any controlled substance or controlled substance analog, upon conviction, is guilty of:
(1) A drug severity level 2 felony upon conviction for a first offense."

Wig argues insufficient evidence was presented to convict her of attempted manufacture of methamphetamine because she possessed only one of the necessary ingredients. She fails to acknowledge that she and her son-in-law told law enforcement that she agreed to purchase the cold medicine for third parties to manufacture methamphetamine, in return for cash and product. These statements, in addition to her possession of multiple boxes of cold medication and the salad shooter coated with ground pseudoephedrine, constituted sufficient evidence for conviction.

### Sufficiency of the Evidence of Felony Possession of Paraphernalia

Wig's last argument on appeal is that the evidence was insufficient to support her conviction for felony possession of drug paraphernalia. Such possession is defined as using or possessing with intent to use "any drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, sell or distribute a controlled

substance in violation of the uniform controlled substances act."
K.S.A. 2001 Supp. 65-4152(a)(3).

The State presented evidence regarding the role of cold tablets containing ephedrine or pseudoephedrine in the manufacture of methamphetamine. Wig admitted to owning the salad shooter found in her van, which contained the residue of ground pseudoephedrine. Although she did not admit to grinding the tablets herself, she did admit to purchasing the cold tablets for the express purpose of enabling others to manufacture methamphetamine. This combination of evidence was sufficient to support her conviction of felony possession of paraphernalia.

Affirmed.