NOT DESIGNATED FOR PUBLICATION

No. 118,755

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JON A. HETER,
*Appellant*.


MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed January 11, 2019. Reversed, sentence vacated, and case remanded with directions.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Andrew R. Davidson*, assistant district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., BUSER, J., and SIDNEY R. THOMAS, District Judge, assigned.

PER CURIAM: Jon A. Heter was convicted of possession of methamphetamine and possession of drug paraphernalia. He appeals his conviction. Heter claims his constitutional rights were violated by an unlawful stop and search. Heter further asserts that the exclusionary rule should have prevented the subsequently acquired evidence from being used against him and the trial court erred in not granting his motion to suppress. The State argues there was no unlawful stop or search. In the alternative, the State asserts two exceptions (attenuation or inventory search) support the trial court's findings denying the motion to suppress. We find there was an unlawful arrest and

1

search. We further find the suggested exceptions to the exclusionary rule do not apply and Heter's motion to suppress should have been granted.

On November 17, 2016, shortly after midnight, Heter was riding his bicycle on a sidewalk in Hutchinson. Officer Josh Long of the Hutchinson Police Department was on patrol in the area. He had been informed that someone was riding a bicycle west from his location. Long subsequently observed a person on a bike and followed him for about 1 1/2 blocks. The bicycle did not have any headlight. After observing this, Long yelled out his window asking the person on the bicycle to stop.

The person on the bicycle did stop. Officer Long explained to the individual that when riding a bike at night, a light needs to be affixed to the bike. Officer Long then asked the person for his name and the bicycle rider responded his name was Aaron Ceneno. Officer Long also asked for a date of birth but the person on the bike refused to answer. Because this person did not give his date of birth as requested, Officer Long handcuffed and arrested him for interference with law enforcement. A search incident to arrest of the person was conducted by Officer Long. Through this search, Officer Long discovered a driver's license which identified the arrestee as Jon Heter. Officer Long then discovered Heter had an outstanding arrest warrant. It took less than five minutes to discover that Heter had given the incorrect name to Officer Long.

Since Heter was being arrested, Officer Long decided the bicycle was going to be taken to the law enforcement center for safekeeping. Officer Long then searched a container on Heter's bicycle. Inside the container was a cigarette box that contained a glass pipe with burnt residue along with a small plastic bag with residue. Long believed the residue to be methamphetamine. The substance was preserved and sent to the Kansas Bureau of Investigation to be tested. The results established methamphetamine was on those items. The State charged Heter with possession of methamphetamine and possession of drug paraphernalia.

Heter moved to suppress all evidence seized or derived from his bicycle stop. He argued that since Officer Long had no authority to stop or arrest him, all evidence obtained from the illegal search, seizure, and arrest or fruits therefrom should be suppressed. At the hearing on the motion to suppress, the trial court issued its ruling denying the motion from the bench. The trial court concluded that the initial stop was legal by finding that if Officer Long did make a mistake of law when he stopped Heter, it was a reasonable error of law and the stop was nonetheless lawful. Finally, the trial court held that even if the stop was illegal, the attenuation doctrine applied because of the subsequently found outstanding warrant. The trial court reasoned that once that warrant was discovered, it resolved any illegal search issue which would then allow the evidence of the drugs and the drug paraphernalia to be admitted under an inventory search.

After the trial court denied Heter's motion to suppress, the parties agreed to a bench trial on stipulated facts. In the stipulated facts, Heter specifically renewed his objection to the admission of evidence resulting from the search and seizure and reserved his right to appeal the trial court's denial of his motion to suppress. The trial court convicted Heter of possession of methamphetamine and sentenced him to an underlying 17-month prison term but allowed 12 months of probation.

*Was Heter lawfully stopped and arrested?*

The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. Section 15 of the Kansas Constitution Bill of Rights does the same. *City of Atwood v. Pianalto*, 301 Kan. 1008, 1011, 350 P.3d 1048 (2015). Evidence obtained during an unreasonable search or seizure may be suppressed under the judicially created exclusionary rule. *State v. Powell*, 299 Kan. 690, 694-95, 325 P.3d 1162 (2014). The State bears the burden to prove to the trial court that a search or seizure was legal. *State v. Walker*, 292 Kan. 1, 5, 251 P.3d 618 (2011).

3

When reviewing a suppression question, this court first reviews the factual underpinnings of the lower court's suppression ruling for "substantial competent evidence." *State v. Karson*, 297 Kan. 634, 639, 304 P.3d 317 (2013). Substantial competent evidence is "evidence that possesses both relevance and substance and that furnishes a substantial basis of fact from which the issues can reasonably be resolved." *Wilkins v. State*, 286 Kan. 971, 980, 190 P.3d 957 (2008). After reviewing the factual underpinnings, this court next reviews the trial court's legal conclusions de novo. *Karson*, 297 Kan. at 639. In cases like the one here where the underlying material facts are not in dispute, whether to suppress evidence is a question of law to be reviewed de novo. *Pianalto*, 301 Kan. at 1012.

A police officer can legally detain an individual if "an objective officer would have a reasonable and articulable suspicion that the detainee committed, is about to commit, or is committing a crime." *State v. Thomas*, 291 Kan. 676, Syl. ¶ 8, 246 P.3d 678 (2011). Here, Officer Long testified that he stopped Heter because he was riding a bicycle on a sidewalk, in the dark, without a headlight on the front. The parties agree that riding a bicycle on the sidewalk is legal where Officer Long stopped Heter. The issue is whether the law requires bicycle riders on sidewalks to use a headlight after dark.

On appeal, the parties disagree whether the initial stop for failure to use a bicycle headlight was unlawful. The State argues that Heter was indeed violating the law when Officer Long stopped him. Heter argues that the stop was unlawful because he was not violating any law. The parties' dispute centers on an issue of statutory construction, namely, how to interpret K.S.A. 8-1586 together with K.S.A. 8-1592.

These statutes apply the Kansas Uniform Act Regulating Traffic to some actions of bicycle and vehicle drivers. K.S.A. 8-1586 states, in relevant part, the following:

4

"(a) Violation of any provision of K.S.A. 8-1587 to 8-1592, inclusive, and amendments thereto, is a traffic infraction.

. . . .

(c) The provisions of K.S.A. 8-1587 to 8-1592, inclusive, which are applicable to bicycles shall apply whenever a bicycle is operated upon any highway or upon any path set aside for the exclusive use of bicycles, subject to those exceptions stated herein."

K.S.A. 8-1592 governs lamps, brakes and other equipment on bicycles and states: "(a) Every bicycle when in use at nighttime shall be equipped with a lamp on the front which shall emit a white light visible from a distance of at least 500 feet to the front . . . ."

Heter argues Kansas law does not require bicyclists riding on sidewalks after dark to use a headlight. He asserts that per K.S.A. 8-1586(c), K.S.A. 8-1592 applies *only* to bicycles "operated upon any highway or upon any path set aside for the exclusive use of bicycles."

The State, on the other hand, points out that K.S.A. 8-1586(c) more completely says "K.S.A. 8-1587 to 8-1592 . . . shall apply whenever a bicycle is operated upon any highway or upon any path set aside for the exclusive use of bicycles, *subject to those exceptions stated herein*." (Emphasis added.) The State argues that exception clause applies to K.S.A. 8-1592(a) and expands its application beyond highways or special bike paths to "every bicycle" no matter where it is operated. In other words, the State argues that since K.S.A. 8-1592(a) applies to "every bicycle," then it requires application to not only bicycles operated on a highway or special bike paths but to "every bicycle" including the one operated by Heter on the sidewalk. It follows from this reasoning that this is the only way to give the exception language in K.S.A. 8-1586(c) any real effect and to simply apply plain language to "every bicycle" in K.S.A. 8-1592(a).

Although several interesting questions of statutory construction are presented by this issue, as we set forth more fully below, we find it is not necessary that we answer it

5

at this time. See *State v. Montgomery*, 295 Kan. 837, 840, 286 P.3d 866 (2012) (As a general rule, "Kansas appellate courts do not decide moot questions or render advisory opinions.") This is because, even if we assume it is a traffic infraction, Officer Long still did not have any legal basis to arrest Heter.

The authority given by the State as the basis for the arrest is that a misdemeanor was committed in a law enforcement officer's view. K.S.A. 22-2401(d) (this same subsection makes clear that a law enforcement officer cannot arrest someone for a mere traffic infraction). The misdemeanor that is alleged to have occurred in front of Officer Long is that Heter willfully failed or refused "to comply with any lawful order or direction of any police officer . . . invested by law with authority to direct, control, or regulate *traffic*." (Emphasis added.) K.S.A. 8-1503.

"'Traffic'" means pedestrians, ridden or herded animals, vehicles and other conveyances either singly or together while using any highway for purposes of travel." K.S.A. 8-1477. The definition of "highway" is "the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for the purposes of vehicular travel." K.S.A. 8-1424. A "sidewalk" is "that portion of a street between the curb lines, or the lateral lines of a roadway, and the adjacent property lines intended for use by pedestrians." K.S.A. 8-1465.

Under these definitions, it is clear that a sidewalk is not a highway because it is not intended for the use of vehicles. Moreover, it is clear traffic is limited to things occurring on highways. As a result, a misdemeanor is committed under K.S.A. 8-1503 only under the officer's authority to regulate "traffic" which is limited to things occurring on highways. Since it is undisputed that Heter was on a sidewalk (not a highway), Officer Long did not have any authority to arrest Heter for a violation of K.S.A. 8-1503. See *State v. Greene*, 5 Kan. App. 2d 698, 704-05, 623 P.2d 933 (1981) (protestors did not violate K.S.A. 8-1503 when they refused to obey after police ordered them to cease

6

trespassing on private railroad tracks that intersected with county roads); *Shepack v. Kansas Department of Revenue*, No. 117,508, 2018 WL 2373232, *5 (Kan. App. 2018) (unpublished opinion) (man did not violate K.S.A. 8-1503 when he disregarded officer's order that he move to rear of vehicle during traffic stop).

The State also claims Heter's conduct was similar to the defendant's conduct in *State v. Latimer*, 9 Kan. App. 2d 728, 687 P.2d 648 (1984). In that case, the defendant appealed his conviction for obstruction of official duty pursuant to K.S.A. 21-3808. The basis for the conviction was that the defendant gave a fictitious identity to a law enforcement officer. However, that case is distinguishable.

In *Latimer*, the law enforcement officer had probable cause to arrest the defendant for a different misdemeanor—theft of services. As a result, the defendant in that case was already properly arrested when he gave the false name. Moreover, the court in *Latimer* also specifically directed that "a refusal to answer furnishes no basis for an arrest." 9 Kan. App. 2d at 731. As authority for that point, the court referenced *Kolender v. Lawson*, 461 U.S. 352, 364, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983). The Kansas Supreme Court in *State v. Pritchett*, 270 Kan. 125, 132, 11 P.3d 1125 (2000), has cited with approval the following from Justice Brennan's concurrence in *Kolender*:

> "[P]olice officers with reasonable suspicion that an individual has committed or is about to commit a crime may detain that individual, using some force if necessary, for the purpose of asking investigative questions. They may ask their questions in a way calculated to obtain an answer. But they may not *compel* an answer, and they must allow the person to leave after a reasonably brief period of time unless the information they have acquired during the encounter has given them probable cause sufficient to justify an arrest." 461 U.S. at 366.

In contrast to *Latimer*, as set forth above, the State here has not identified any probable cause for a misdemeanor arrest by Officer Long. Furthermore, even if Officer

7

Long had reasonable suspicion of a crime, he could not *compel* an answer to his request for a date of birth. At that point in time, Officer Long did not know of any false information from Heter and had not yet identified any legal basis for an arrest. As a result, he was required to allow Heter "to leave after a reasonably brief period of time." *Pritchett*, 270 Kan. at 132 (quoting from *Kolender*, 461 U.S. at 366).

Instead of letting Heter go, Officer Long handcuffed and arrested him. At this point, the encounter became an unreasonable search and seizure because Officer Long had no legal basis to make the arrest. It was after this time that Officer Long searched Heter's person and located his driver's license identifying Heter and alerting Officer Long that Heter had given a false name.

In sum, the State has not met its burden to show that Heter was properly arrested. As a result, the State has not and cannot meet its burden that any search incident to arrest was lawful. See *State v. Teeter*, 249 Kan. 548, 819 P.2d 651 (1991). Therefore, the exclusionary rule would require all evidence obtained after the unlawful arrest to be suppressed unless an exception to the exclusionary rule applies.

*Attenuation doctrine*

The State argues that, even if Officer Long lacked probable cause to arrest Heter, the discovery of the warrant after the arrest sufficiently attenuates the unlawful arrest and prevents the exclusion of the drug evidence. Heter argues the attenuation doctrine does not apply because of the facts in this case. The trial court here concluded that even if the stop or arrest was unlawful, that under the attenuation doctrine as presented in *Utah v. Strieff*, 579 U.S. ___, 136 S. Ct. 2056, 2061, 195 L. Ed. 2d 400 (2016), when Officer Long learned of the arrest warrant, "that took care of the matter and the bicycle was found to contain the drugs and the inventory search."

8

The exclusionary rule was created to deter Fourth Amendment violations by requiring "trial courts to exclude unlawfully seized evidence in a criminal trial." *Strieff*, 136 S. Ct. at 2061. It applies to the "'primary evidence obtained as a direct result of an illegal search or seizure' and . . . 'evidence later discovered and found to be derivative of an illegality', the so called 'fruit of the poisonous tree.'" *Strieff*, 136 S. Ct. at 2061. In its attempt to balance the high social costs of applying the exclusionary rule against its deterrent benefits, the Supreme Court has recognized several exceptions to its application. *Strieff*, 136 S. Ct. at 2061. The attenuation doctrine has been recognized as one of those exceptions.

The attenuation doctrine allows courts to admit evidence when "the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that 'the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained.' [Citation omitted.]" *Strieff*, 136 S. Ct. at 2061. Three factors were identified in *Strieff* to determine whether the attenuation doctrine applied in that case. Those factors are as follows: (1) the "temporal proximity" of the unconstitutional search and the discovery of evidence; (2) any "intervening circumstances"; and (3) the purpose and flagrancy of the misconduct. *Strieff*, 136 S. Ct. at 2061-62. However, no one factor is dispositive and the court may consider other factors as well. *State v. Salazar*, 56 Kan. App. 2d 410, 421, ___ P.3d ___ (Kan. App. 2018).

The first factor is temporal proximity. In *Strieff*, law enforcement had received a tip about drug activity at a certain residence. An officer then observed several people going in and leaving from this residence while only staying a short amount of time. That officer saw Strieff leaving the residence, stopped him and asked that he identify himself. The officer did not, however, have reasonable suspicion to justify stopping the defendant and requesting he identify himself. Nevertheless, the defendant did identify himself and when the officer ran a record check, he learned the defendant had a warrant.

9

The court found the fact that the officer learned of the warrant only minutes after the unlawful act weighed in favor of suppression. *Strieff*, 136 S. Ct. at 2062. As outlined above, in this case Officer Long only learned of Heter's proper identity because of the unlawful search incident to arrest. As a result, since there was no time between the unlawful act and the discovery of either Heter's correct name or his warrant, this factor weighs even heavier in favor of suppression than what was before the court in *Strieff*.

The second factor is the presence of any intervening circumstances. In *Strieff*, the court found that a valid warrant which was unconnected to the present stop was a proper intervening circumstance. In this case, after Officer Long learned of Heter's proper identity, he discovered an unconnected valid warrant for Heter's arrest. At that point, Officer Long had a duty to arrest Heter. See *United States v. Leon*, 468 U.S. 897, 920, n. 21, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). As a result, the discovery of a warrant by Officer Long would seem to be an intervening circumstance that weighed against exclusion of the evidence. However, some facts that make *Strieff* distinguishable from this case do point the other way.

In *Strieff*, the police officer discovered the warrant first and then arrested Strieff because of the warrant. Here, Officer Long arrested Heter and then found the warrant. If Officer Long had not arrested Heter in the first place, he never would have discovered the driver's license giving Heter's proper identity or then the outstanding warrant. Because the driver's license and the warrant were both found during the same unlawful search incident to arrest, the warrant here appears to be significantly less of an intervening circumstance than the warrant in *Strieff*. The United States Supreme Court wrote that the warrant there was an intervening circumstance because "[t]he discovery of that warrant broke the causal chain between the unconstitutional stop and the discovery of evidence by compelling [the police officer] to arrest Strieff." 136 S. Ct. at 2063. Here, the discovery of the warrant was not an intervening circumstance because it was still part of the original unlawful search of Heter's person after an unlawful arrest. There was nothing

10

to break the causal chain of the illegal conduct by Officer Long in this case. As a result, this factor also weighs in favor of suppression.

Finally, the third factor is police misconduct. The record does not contain any factual findings about police misconduct or the officer's intent. Since neither party offers any argument on this factor, we conclude it is a neutral factor in this case.

Heter also argues the attenuation doctrine should not be applied because a search incident to arrest cannot be used to justify a search of a container within a container on his bicycle. In *Strieff*, the asserted attenuation was because the discovery of the arrest warrant authorized the arrest and search of the defendant's person incident to that arrest. The illegal drugs and drug paraphernalia were found on the defendant's person. In contrast, the illegal drugs and paraphernalia in this case were not found on Heter's person. They were found in a cigarette box inside a container on the bicycle Heter had been riding.

In general, "a search incident to arrest may only include 'the arrestee's person and the area "within his immediate control."'" *Arizona v. Gant*, 556 U.S. 332, 339, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009). The reasons for this general rule are officer safety and "safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy." *Gant*, 556 U.S. 339. In applying those principles to a vehicle search, the Supreme Court instructed that compartments of the vehicle can be searched incident to arrest "only when the arrestee is unsecured and within reaching distance of the . . . compartment" or "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.' [Citation omitted.]" *Gant*, 556 U.S. at 343.

In the present case, the initial unlawful arrest was for interference with a law enforcement officer. Heter was placed in handcuffs and then Officer Long performed the search incident to arrest which revealed Heter had given a false name. No other evidence

11

was found on his person. The State offers no officer safety reason nor identifies any reasonable belief Officer Long had at the time of Heter's arrest to believe evidence of a crime was in any compartments on the bicycle. As a result, no search incident to arrest could justify looking into any compartment on the bicycle.

In sum, we find the attenuation factors here do not weigh in favor of a finding that a subsequent discovery of the warrant sufficiently attenuates a prior illegal arrest. Moreover, the facts of this case require a finding that no search incident to arrest could justify the search of compartments on the bicycle. As a result, the attenuation exception does not apply to prevent the application of the exclusionary rule in this case.

*Inevitable discovery—inventory search*

Heter alternatively argues that "even if the officer's discovery of the arrest warrant attenuated the unlawful stop and search of Mr. Heter's person, it does not justify a search of Mr. Heter's bicycle." The State, on the other hand, argues that Heter did not raise the issue of the scope of the search during the suppression hearing and he should not be allowed to raise the scope of the search for the first time on appeal. In his reply, Heter points out his motion to suppress applied to "all evidence and/or fruits obtained herein from the illegal detention, search, and seizure conducted by" Officer Long. Moreover, it appears the trial court relied on an appropriate inventory search as the basis for denying Heter's motion to suppress the evidence of illegal drugs and the drug paraphernalia. As a result, we find it is appropriate to address this issue.

Inevitable discovery can be an exception to the exclusionary rule. It "allows for the admission of evidence that would have been discovered even without the unconstitutional source." *Strieff*, 136 S. Ct. at 2061. However, it only applies when "law enforcement has lawful custody of the property that is inventoried." *State v. Baker*, 306 Kan. 585, 591, 395 P.3d 422 (2017). The State had the duty to prove that "the unlawfully obtained evidence

12

would have ultimately or inevitably been discovered by lawful means." *State v. Walker*, 283 Kan. 587, Syl. ¶ 8, 153 P.3d 1257 (2007). More specifically, the State had the duty to establish "by a preponderance of the evidence that a standardized inventory policy or routine, when followed, would have inevitably led to the opening of the containers." *Baker*, 306 Kan. at 592. The State produces no such evidence in this case. As a result, there was insufficient evidence to support a finding that an inventory search could be used to justify an exception to the exclusionary rule. The trial court's findings to the contrary are reversed.

CONCLUSION

Because the State has not met its burden to show that Heter was properly arrested, any search incident to arrest is not lawful. When a law enforcement officer learns of an arrest warrant after an unlawful stop, it may attenuate the need to apply the exclusionary rule to any evidence obtained incident to a subsequent arrest. However, the arrest warrant does not attenuate the need for the exclusionary rule given the facts of this case. The attenuation doctrine cannot be extended beyond the search incident to arrest to searching a container within a container not on the defendant's person.

A proper inventory search also operates as an exception to the exclusionary rule. To establish a proper inventory search, the State must produce evidence to establish the containers would have inevitably been opened and the evidence discovered because of a standardized inventory policy or routine. Since the record in this case does not have any such evidence, an inventory search cannot operate as an exception to the exclusionary rule either.

In sum, since Heter was not lawfully arrested and the State has not produced sufficient evidence to establish any exception to the exclusionary rule, the trial court erred in denying Heter's motion to suppress. As a result, the trial court's denial of Heter's

13

motion to suppress is reversed, Heter's conviction is reversed, his sentence is vacated, and the case is remanded to the district court for further proceedings.

Reversed, sentence vacated, and case remanded with directions.