The STATE of Ohio, Appellee,

v.

WILSON et al., Appellants.

[Cite as *State v. Wilson* (1991), 76 Ohio App.3d 519.]

Court of Appeals of Ohio,
Wood County.

No. 91WD045.

Decided Dec. 13, 1991.

**520**

Albert L. Potter, Prosecuting Attorney, for appellee.

Rick Schmidt, Greg Bakies and James Sharp, for appellants.

SHERCK, Judge.

This is a consolidated appeal from judgments of conviction and the subsequent sentencing of thirty-six adults in the Bowling Green Municipal Court for the underage consumption of alcohol. The trial court denied appellants' motions to suppress confessions and admissions of underage drinking. Following the trial court's refusal to grant the motions to suppress, appellants entered pleas of no contest to the charges of underage consumption. Appellants were then found guilty and sentenced. Because we find appellants were in fact subjected to custodial interrogations without being first advised of their constitutional rights as mandated by *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, we reverse the decision of the trial court.

On the evening of October 26, 1990, Ohio Liquor Control agents, Wood County Sheriff's deputies and Weston, Ohio police officers executed a search warrant on a rental hall in Weston. The warrant had been obtained on information that two Bowling Green State University social fraternities had rented the hall and intended to provide alcoholic beverages to persons below the legal drinking age. There were approximately fifteen officers assigned to execute the search warrant, including seven uniformed deputies.

At approximately 11:50 p.m., the law enforcement personnel walked into the hall; the nonuniformed officers led the way. At least two of the uniformed deputies displayed shotguns upon entry. The officers announced they were executing a search warrant. Those in the hall were ordered to "freeze" and raise their hands. According to testimony presented at the suppression hearing, those in the hall were required to keep their hands raised between five and twenty minutes.

After the initial entry, officers requested identification of those present. Those aged twenty-one and over were allowed to leave. Those under age twenty-one were ordered to go to a small holding area near the rear of the hall. Approximately sixty persons were so detained. While these persons were in this make-shift holding area, they were not allowed to smoke or eat. Detainees who needed to use the restroom were escorted into the restroom by officers who remained with the subject at all times.

Once the underage individuals were segregated in the rear of the hall, officers set up tables in a "U" shape in front of the area where the underage persons were held. Officers set up chairs and asked those being held to come, one at a time, and sit across the table from an officer. That officer asked each subject whether he or she had consumed alcohol that night. Those who admitted consuming alcohol were written a citation for underage consumption of alcohol and allowed to leave. If the subject denied alcohol consumption, officers on occasion would reiterate the question or make comments, such as: "If you deny or refuse to tell me the truth, you'll receive a stricter fine," or "We'll make your life pure and utter hell"; or, "See that guy over there; it will be a felony if you don't tell me." People were held in the holding area for between fifteen and ninety minutes while this processing occurred.

Appellants, who are thirty-six of those charged with violation of the village ordinance prohibiting the underage consumption of alcohol, moved to suppress their statements of admission or confession which were given the night of the raid. They asserted that these admissions were involuntary in that they were made without having been advised of their rights as mandated in *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Therefore, appellants contend their rights under the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution were violated.

A suppression hearing was held wherein the village of Weston stipulated that none of the appellants had been advised of his or her *Miranda* rights the night the citations had been issued. At that hearing, four appellants testified to the events of that evening and to their belief that while in the holding area their movements were restricted and they were not permitted to leave. Appellee called four of the officers who had been in the hall that evening who testified that appellants had not been placed under arrest or taken into custody and that anyone in the holding area was free to leave should he or she have chosen to do so. The officers, however, stated that no one asked to leave.

Following the hearing, the trial court issued a decision finding, *inter alia:* "People in the [holding] area were held for anywhere from fifteen minutes up

to an hour and a half * * *.'' Even so, the trial court, citing *United States v. Streifel* (C.A.1, 1986), 781 F.2d 953, stated it could not conclude that '' * * * a reasonable person in defendants' position would have believed, not merely that he was not free to go, but that he was actually in custody and 'at the mercy of the police.' '' The court then denied appellants' motions to suppress.

Appellants offer the following assignments of error:

''1. The Bowling Green Municipal Court erred in ruling that defendants were not in custody for purposes of custodial interrogation, and, thus, finding that requisite *Miranda* warnings were not necessary.

''2. The decision to deny defendants' joint motion to suppress the statements and admissions obtained is contrary to law and equity, and against the manifest weight of the evidence.''

Appellant Karen M. Black has filed a separate brief. Her second assignment of error is identical to the second assignment quoted above. Her first assignment of error is worded somewhat differently:

''1. The Bowling Green Municipal Court erred in ruling that defendant was not in custody for purposes of custodial interrogation, and therefore had no right to requisite *Miranda* warnings.''

Since all the assignments of error are closely related, they will be discussed together.

''[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'' *Miranda v. Arizona, supra*, 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706.

The determination of whether one is ''in custody'' for the purposes of *Miranda* depends on the determination of whether there is a '' 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest.'' *California v. Beheler* (1983), 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275, 1279. This determination is dependent solely on '' ' * * * how a reasonable man in the suspect's position would have understood his situation.' '' *State v. Warrell* (1987), 41 Ohio App.3d 286, 287, 534 N.E.2d 1237, 1238 citing *Berkemer v. McCarty* (1984), 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317. ''A suspect is therefore 'in custody' for *Miranda* purposes * * * when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of

the degree which the law associates with formal arrest." *United States v. Bengivenga* (C.A.5, 1988), 845 F.2d 593, 596. "Relevant inquiries are whether the suspect is free to leave the scene, the purpose, place, and length of the questioning, and whether a reasonable person in the suspect's position would have considered himself to be in custody." *United States v. Goudreau* (C.A.8, 1988), 854 F.2d 1097, 1098.

The trial court, in making its determination that appellants were not in a custodial situation, relied on the holdings of *Berkemer v. McCarty* and *United States v. Streifel, supra,* a First Circuit Court of Appeals decision which sought to explain *Berkemer.* However, the principal holding in *Berkemer* is the requirement that *Miranda* warnings be given irrespective of the severity of the offense, *Berkemer, supra,* 468 U.S. at 434, 104 S.Ct. at 3147, 82 L.Ed.2d at 331. As a secondary holding, *Berkemer* carves out a "Terry stop" (see *Terry v. Ohio* [1968], 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889) exception to the *Miranda* rule for vehicular traffic stops. According to the *Berkemer* court, this exception is constitutionally palatable because a traffic stop is "temporary and brief * * * [and] public * * *, [and] is substantially less 'police dominated' than that surrounding the kinds of interrogation at issue in *Miranda* itself * * *." (Citations omitted.) *Berkemer, supra,* 468 U.S. at 437–439, 104 S.Ct. at 3149, 82 L.Ed.2d at 333.

The reliance of the trial court on *Berkemer* and its progeny is simply misplaced. In the case at bar, fifteen police officers invaded a gathering of college students. Displaying shotguns, the officers ordered these students to freeze and raise their hands. Officers then took the identification of under-aged students and ordered them to one side of the room. As the trial court properly found, the officers then held these students for a period of up to ninety minutes. These detainees were not even allowed to go to the restroom without officers escorting them. This is not a temporary, brief, public and non-"police dominated" interview envisioned in the *Berkemer* exception to the *Miranda* rule.

Notwithstanding the officers' testimony to the contrary, it is inconceivable that a person who was found facing that situation could reasonably conclude that he or she was free to just walk away. Accordingly, we find that the trial court committed prejudicial error in determining that the interrogation was of a noncustodial nature and the *Miranda* warnings did not apply. Appellants' confessions and admissions are deemed to have been involuntarily made because appellants were not advised of their constitutional rights as mandated by *Miranda v. Arizona* and should have been suppressed. Appellants' first assignment of error is well taken.

Appellants' second assignment of error as it relates to the assertions that the court's factual findings were against the manifest weight of the evidence is not well taken. The trial court's findings of fact are supported by substantial evidence. It is in the application of the law to these facts where the trial court committed reversible error.

On consideration whereof, the court finds that appellants were prejudiced and prevented from having a fair trial, and the judgment of the Bowling Green Municipal Court is reversed. This cause is remanded to said court for further proceedings not inconsistent with this decision. It is ordered that appellee pay the court costs of this appeal.

*Judgment reversed*
*and cause remanded.*

GLASSER and ABOOD, JJ., concur.