[Cite as *State v. Jeter*, 2024-Ohio-1442.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY


State of Ohio                                              Court of Appeals No. E-23-034

    Appellant                                         Trial Court No. 2022 CR 0098

v.

Curtis Jeter                                              **DECISION AND JUDGMENT**

    Appellee                                          Decided:  April 12, 2024

* * * * *

Kevin J. Baxter, Erie County Prosecuting Attorney, and
Kristin R. Palmer, Assistant Prosecuting Attorney, for appellant.

Karin L. Coble, for appellee.

* * * * *

**SULEK, P.J.**

{¶ 1} Appellant the state of Ohio appeals the judgment of the Erie County Court of

Common Pleas, which granted appellee Curtis Jeter's motion to suppress the evidence

against him.  Because the trial court failed to make any findings of fact or conclusions of

law in rendering its decision, thereby preventing any meaningful review, the judgment is

reversed and the matter is remanded.

## I. Factual Background and Procedural History

{¶ 2} On March 10, 2022, the Erie County Grand Jury indicted Jeter on one count of possession of cocaine in violation of R.C. 2925.11(A) and (C)(4)(e), a felony of the first degree, and one count of trafficking in cocaine in violation of R.C. 2925.03(A)(2) and (C)(4)(f), also a felony of the first degree.  The charges stemmed from the discovery of drugs in Jeter's car following a traffic stop.

{¶ 3} After initially pleading not guilty, Jeter moved to suppress the evidence against him, arguing that (1) there was no lawful cause to initiate the traffic stop or to arrest him without a warrant, (2) there was no reasonable suspicion to justify extending the stop for a K-9 drug sniff, (3) there was no probable cause to search his vehicle without a warrant, and (4) any statements obtained from him were in violation of his right against self-incrimination and his right to counsel.

{¶ 4} The trial court held a hearing on Jeter's motion to suppress.  At the hearing, Ohio State Highway Patrol Troopers David Passet and Kyle Mayle testified.  Passet, a member of the criminal patrol team, testified that on August 12, 2020, he became aware of a tip from a local Drug Enforcement Administration ("DEA") agent that a white or cream-colored Cadillac had left the residence of a suspect who the DEA was surveilling, and that the Cadillac was travelling westbound on State Route 2 in Vermilion Township. Passet had been positioned in the crossover observing the westbound traffic on State Route 2 when he noticed a Cadillac matching the description in the far-right lane.  He

2.

testified that he saw the Cadillac commit the traffic violation of failing to maintain a safe distance between moving vehicles. Specifically, he explained:

[G]iven that the traffic and the heavy traffic on that day was -- most traffic would have been travelling between 60 and 70 miles per hour. I observed the Defendant vehicle travelling at a distance of approximately one and a half to two and a half car lengths, um, and just me knowing if that front vehicle had slammed on the brakes, the rear vehicle would not have the reaction time to come to a stop safely without rear-ending it.

* * *

With that heavy traffic, a lot of traffic was passing, moving in and out of lanes, and so the first point I would make is that if one of those vehicles that was overtaking or passing on the left needed to merge into that right lane, there was not sufficient space for anyone to merge in front of him.

{¶ 5} Later in his testimony, Passet further described that there was an SUV in the right lane that was travelling at a lower rate of speed, causing the vehicles behind it to brake. As the vehicles bunched up behind the SUV, Jeter's Cadillac approached from behind, did not brake in time to maintain a safe distance, and started following too closely.

{¶ 6} In addition, Passet testified that as the Cadillac was passing him and as he began to pursue it, he observed that the front bumper was not fully secured and the right

3.

side of it was dipping down and flapping in the wind. Passet described the flapping as a "mild to moderate flap." He testified that the unsecured bumper constituted an equipment safety violation that further justified his traffic stop.

{¶ 7} Upon observing these violations, Passet began to follow the vehicle, but because of the heavy traffic, he was unable to pull out of the crossover right away. By the time he caught up to Jeter's vehicle, enough time had lapsed that his camera did not record the traffic violation in the 90 seconds before he manually activated it. Furthermore, the angle of the video camera did not show the Cadillac's front bumper. Thus, there was no video evidence of any of Jeter's alleged traffic violations.

{¶ 8} After Passet initiated the traffic stop, he informed Jeter that he stopped him for following too closely and also because Jeter's front bumper was dangling down. While the conversation was not discernable on the audio from Passet's video camera, Passet testified that Jeter informed him that he was aware that the bumper was broken. Jeter also told him that he was coming from spending approximately one and a half hours at the casino, which Passet found odd because the casino was more than an hour away and thus Jeter would have spent more time driving than he would have spent at the casino. Before returning to his patrol cruiser to process a ticket, Passet looked at Jeter's front bumper and noticed that several of the zip-ties holding it up had broken.

{¶ 9} Once Passet began processing Jeter's information, he discovered that Jeter had an active misdemeanor arrest warrant that included cautions of drug trafficking and drug abuse. Passet, however, was outside of the arrest pickup radius for the warrant.

4.

{¶ 10} While Passet was processing the ticket, Trooper Mayle arrived with his K-9 dog, Ure. Mayle had been positioned in the same crossover as Passet, but because of the location of the vehicles, he could not see the alleged traffic violations. After a brief discussion with Passet, Mayle and Ure conducted a free-air sniff of the vehicle, during which Ure alerted to the presence of drugs.

{¶ 11} Mayle also recalled seeing that the right portion of the bumper was hanging down and that two zip ties had snapped but others were still holding the bumper on. He admitted, though, that it was a quick observation because he was focused on Ure and on not getting hit by traffic.

{¶ 12} Approximately seven minutes elapsed from the time when Passet initiated the traffic stop to when Ure alerted. Jeter was then secured in Passet's cruiser while Passet and Mayle performed a search of the vehicle. The search uncovered the suspected drugs. As Mayle was returning to Passet's cruiser following the discovery, Jeter exclaimed "Man, you got me." Off camera, the audio then captured the troopers advising Jeter of his *Miranda* rights. A few minutes later, Jeter admitted that the marijuana and cocaine were for his personal use.

{¶ 13} Jeter did not present any evidence at the suppression hearing.

{¶ 14} Following the hearing, the parties submitted supplemental briefs. Jeter maintained that Passet's testimony should not be believed because Passet was simply trying to find a way to justify stopping him to investigate the suspicions of drug trafficking.

5.

{¶ 15} Furthermore, he argued that Passet's testimony did not establish the offense of failure to maintain a safe space between moving vehicles under R.C. 4511.34(A), which provides, "The operator of a motor vehicle * * * shall not follow another vehicle * * * more closely than is reasonable and prudent, having due regard for the speed of such vehicle * * * and the traffic upon and the condition of the highway." Jeter asserted that, based upon Passet's testimony, he must have been maintaining a safe distance because when the SUV and the traffic in front of him slowed down, Jeter was able to apply his brakes in time to avoid an accident.

{¶ 16} Finally, he argued that no evidence was presented demonstrating that he committed a bumper height violation simply by securing the right side of his bumper with zip ties. R.C. 4513.021 prescribes that it is a minor misdemeanor to operate a vehicle that does not conform to standards for bumpers. Ohio Administrative Code 4501-43-04(A) states that "[t]he horizontal bumper shall be at least 4.5 inches in vertical height, centered on the vehicle's centerline, and extend no less than the width of the respective wheel track distances. Bumpers shall be horizontal load-bearing bumpers and attached to the vehicle frame to effectively transfer impact when engaged." Jeter contended that no evidence was presented to demonstrate that the bumper, which was attached to the vehicle frame by zip ties, was not load bearing and could not effectively transfer impact when engaged.

{¶ 17} The state, in opposition, argued that Passet's testimony demonstrated that, based on the amount of traffic and the rate of travel, Jeter was following the car in front

6.

of him too closely such that he would not be able to avoid an accident if the vehicle in front of him stopped abruptly. The state also maintained that the bumper hanging from the car provided a separate basis for the stop because the broken zip ties were no longer effectively keeping the bumper attached as required.

{¶ 18} On May 24, 2023, the trial court summarily granted Jeter's motion to suppress, stating: "At this time the Court finds Defendant's Motion well-taken and the Motion to Suppress is hereby GRANTED."

## II. Assignment of Error

{¶ 19} The state timely appealed the trial court's May 24, 2023 judgment, asserting one assignment of error for review:

> 1. The trial court erred by granting Defendant's Motion to Suppress.

## III. Analysis

{¶ 20} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8; *State v. Escobedo*, 2023-Ohio-3410, 224 N.E.3d 1274, ¶ 34 (6th Dist.). "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*; *Escobedo* at ¶ 34. "Accepting these facts as true, the appellate court must then independently determine, without deference to

7.

the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*; *Escobedo* at ¶ 34.

**{¶ 21}** The Fourth Amendment to the United States Constitution guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Article I, Section 14 of the Ohio Constitution is nearly identical and "affords the same protection in felony cases." *State v. Eatmon*, 169 Ohio St.3d 1, 2022-Ohio-1197, 201 N.E.3d 818, ¶ 27.

**{¶ 22}** In determining whether the traffic stop and discovery of the drugs constituted an unreasonable search and seizure, several issues are implicated.[1]

**{¶ 23}** First, it must be determined whether Passet had probable cause to believe that Jeter committed a traffic violation. In *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12, 665 N.E.2d 1091 (1996), the Ohio Supreme Court held that "where an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid regardless of the officer's underlying subjective intent or motivation for stopping the vehicle in question."

---

[1] In the trial court, Jeter also argued generally that the trial court should suppress any statements that he made before he was given the *Miranda* warnings. He appears to have abandoned this argument as he did not raise it in his post-hearing brief nor does he address it on appeal. Moreover, the video recording shows that Jeter's exclamation "Man, you got me" was not made in response to any question from the troopers, and his confession to possessing the drugs was only made after he had been read the *Miranda* warnings.

8.

**{¶ 24}** Second, it must be determined whether the traffic stop was unreasonably delayed to conduct the K-9 free air sniff. It is well-settled that "[t]he use of a drug dog to sniff the exterior of a vehicle, lawfully detained, is not a search within the meaning of the Fourth Amendment." *State v. Jones*, 2019-Ohio-3704, 143 N.E.3d 1170, ¶ 18 (6th Dist.), citing *State v. Bordieri*, 6th Dist. Lucas No. L-04-1321, 2005-Ohio-4727, ¶ 22; *U.S. v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). And, "law enforcement officials do not need reasonable suspicion of drug related activity in order to subject a lawfully detained vehicle to a drug dog sniff." *Id.* But, absent additional reasonable suspicion of drug activity, "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez v. United States*, 575 U.S. 348, 350, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015). The time needed to handle a traffic violation includes "the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates." *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 12.

**{¶ 25}** Finally, it must be determined whether an exception to the warrant requirement permitted Passet and Mayle to search the vehicle. "Once a law enforcement officer has probable cause to believe that a vehicle contains contraband, he or she may search a validly stopped motor vehicle based upon the well-established automobile exception to the warrant requirement." *State v. Moore*, 90 Ohio St.3d 47, 51, 734 N.E.2d 804 (2000); *State v. Kendall*, 6th Dist. Williams No. WM-19-024, 2021-Ohio-1551, ¶ 50.

9.

**{¶ 26}** An analysis of these issues, however, is stymied by the lack of any explanation by the trial court in how it reached its decision.[2] Without factual findings and conclusions of law, it is impossible to determine the factual basis for the trial court's decision in order to conduct a de novo review of the court's legal conclusions. *Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8.

**{¶ 27}** The trial court's May 24, 2023 judgment, therefore, is reversed and the matter is remanded to the trial court for findings of fact and conclusions of law to support its decision. *State v. Edwards*, 2016-Ohio-4771, 68 N.E.3d 228, ¶ 24 (10th Dist.) ("The trial court's failure to make the essential findings prevents this court from conducting a meaningful review of the trial court's ruling on the motion to suppress and constitutes reversible error."); *see also State v. Benson*, 11th Dist. Ashtabula No. 2018-A-0054, 2019-Ohio-3234, ¶ 73 ("Because the trial court failed to provide us with a sufficient basis upon which to determine whether its decision was supported by competent, credible evidence, we remand for the trial court to make findings of fact and conclusions of law based on the evidence adduced at the suppression hearing as to whether the drugs seized were the result of an unlawful search."); *State v. Dennis*, 9th Dist. Summit No. 27692,

---

[2] The state could have, but did not, move the trial court for findings of fact or conclusions of law under Crim.R. 12(F), which provides that "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record." While a lack of factual findings does not require remand as a blanket rule, if factual issues are in dispute and the record does not provide a sufficient basis to review the appellant's assigned errors on appeal, Crim.R. 12(F) supports reversal and remand to the trial court for factual findings. *State v. Brandon,* 5th Dist. Muskingum No. CT2014-0039, 2015-Ohio-2072 (remand for findings of fact and conclusions of law based on evidence adduced at the suppression hearing).

2016-Ohio-8136, ¶ 6; *State v. Brandon*, 5th Dist. Muskingum No. CT2014-0039, 2015-Ohio-2072, ¶ 12.

**{¶ 28}** Accordingly, the state's assignment of error is well-taken.

### IV. Conclusion

**{¶ 29}** For the foregoing reasons, the judgment of the Erie County Court of Common Pleas is reversed.  This matter is remanded to the trial court for it to make findings of fact and conclusions of law based on the evidence adduced at the suppression hearing.  Pursuant to App.R. 24(A), costs of this appeal are ordered to be shared evenly by the parties.

Judgment reversed
and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.                    _____
                                                                 JUDGE
Gene A. Zmuda, J.

                                                       _____
Charles E. Sulek, P.J.                           JUDGE
CONCUR.

                                                       _____
                                                                 JUDGE


---

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.